**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

GULF COAST MARINE HULL & MACHINERY UNDERWRITING POOL 2013 COMPANIES AND INTERESTS (ATLANTIC SPECIALTY INSURANCE COMPANY, MARKEL AMERICAN INSURANCE COMPANY, STATE NATIONAL INSURANCE COMPANY, NAVIGATORS INSURANCE COMPANY, and UNITED STATES FIRE INSURANCE COMPANY) — *Plaintiff*

Versus — CIVIL ACTION NO. 1:20-cv-146-LG-RHW

GREAT AMERICAN INSURANCE COMPANY OF NEW YORK — *Defendant*

**COMPLAINT ASSERTING CLAIMS UNDER THE OIL POLLUTION ACT OF 1990, AND THE DECLARATORY JUDGMENT ACT**

Now into Court, through undersigned counsel, come Plaintiffs, Gulf Coast Marine Hull & Machinery Underwriting Pool 2013 Companies and Interests consisting of Atlantic Specialty Insurance Company, Markel American Insurance Company, State National Insurance Company, Navigators Insurance Company, and United States Fire Insurance Company (hereinafter referred to as "Hull Insurers") in a cause of action in subrogation and for contribution and with respect avers as follows:

1. The M/V GLORIA MAY was at all times pertinent hereto owned by Cheramie, Holdings, LLC, Elair, LLC, Starfuss Holdings, LLC, Gisclair Marine Holdings, LLC, and CBK Holdings, LLC (hereafter collectively referred to as "Owners") which in turn contracted with Integral Offshore, LLC to manage the M/V GLORIA MAY and Integral Offshore,

LLC then subcontracted the management of the M/V GLORIA MAY To Gulf Resource Management, Inc. (hereafter referred to as "GRMI").

2. The F/V CAPT. LE was at all times pertinent hereto owned and/or operated by Lisa Phu who employed as its master Nhi Bach Le to navigate the vessel.

3. Gulf Coast Marine, LLC was paid premiums on behalf of its subscribing underwriters and issued a policy of marine insurance bearing Policy No. GCM 13576 on behalf of certain underwriters providing hull & machinery among other coverages (specifically on behalf of those underwriters above referred to as "Hull Insurers") to the M/V GLORIA MAY and its Owners and to GRMI providing such coverage from October 18, 2013 until October 18, 2014.

4. The Hull Insurers as well as all other coverages under the Gulf Coast Marine policy package specifically excluded coverage with respect to discharge, spillage, emission or leakage of oil, petroleum products, chemicals or other substances of any kind or description whatsoever;

5. The Hull Insurers were obligated to pay costs of defending the Owners, GRMI and the M/V GLORIA MAY for liabilities covered by the Hull Policy they issued.

6. Great American Insurance Company of New York (hereinafter "Great American") was paid premiums and issued a policy of pollution coverage (hereinafter referred to as the "Pollution Policy") bearing Policy No. OMH 17208722 03 to the M/V GLORIA MAY and its Owners and GRMI providing such coverage from October 18, 2013 until October 18, 2014.

7. Great American was obligated to pay costs of defending the Owners, GRMI and the M.V GLORIA MAY for liabilities covered by the Pollution Policy.

8. On August 24, 2014, the M/V GLORIA MAY was involved in a collision with the F/V CAPT. LE, which occurred off Petit Bois Island near Pascagoula, Mississippi

9. As a result of the collision, the F/V CAPT. LE sank in 70 feet of water and began to discharge oil into the Gulf of Mexico. The F/V CAPT. LE had no insurance coverage and, more particularly, for pollution for the discharge of oil or substantial threat of discharge of oil or petroleum products into the seas or waters of the United States.

10. The federal government of the United States of America expended removal costs in excess of $450,000.00 for the discharge of the oil and substantial threat of further discharge of oil into the Gulf of Mexico as a result of the collision.

11. Immediately following the collision, GRMI and the Owners of the M/V GLORIA MAY notified their insurance broker, McGriff Seibels & Williams of LA, Inc. (hereinafter "McGriff") of the incident who in turn immediately notified the Hull Insurers and Great American.

12. On August 25, 2014, legal counsel for F/V CAPT. LE provided written notice to GRMI and the Owners of M/V GLORIA MAY that they did not have insurance and particularly pollution insurance coverages. This notification by legal counsel for F/V CAPT. LE included the written Notice of Federal Interest for An Oil Pollution Incident dated August 25, 2014. In turn, GRMI and the Owners notified McGriff which on August 25, 2014 then provided the written notices to the Hull Insurers and Great American.

13. On August 25, 2014, Tom Neumann on behalf of Great American advised McGriff that they had assigned Chris Carey of the New Orleans law firm of Pugh, Accardo, Haas, Radecker & Carey as their legal representative for this incident.

14. On August 26, 2014, Chris Carey requested that McGriff provide to him documentation and information on the collision. In response, on September 9, 2014 Chris Carey was provided with the statements of crew, investigation report of GRMI, the First Report of Incident by GRMI, the formal USCG Form 2692 filed with the Coast Guard, log book entries for the GLORIA MAY, and contact information for the U S Coast Guard and National Transportation Safety Bureau investigators.

15. On August 27, 2014, legal counsel for the F/V CAPT LE confirmed the vessel had no insurance coverage and that the U S Coast Guard was going to take over the clean-up and removal of oil pollution activity; i.e. federalize the clean-up. This information was provided that same day by electronic e-mail to GRMI, the Hull Insurers and Chris Carey, counsel for Great American.

16. On information and belief, pursuant to the terms of its Pollution Policy, Great American utilized its Great American Emergency Response Team (GAVERT) "to ensure prompt, effective response to any covered incident in coordination with the regulatory agencies" and independently investigated the collision and pollution as a result of the collision.

17. On August 29, 2014, Julia Price, Division Assistant Vice President of Great American notified Tom Neumann, their representative, that they had received the initial notice of loss and assigned file number 976-527830 for the claim.

18. On November 25, 2014, the U S Coast Guard provided to McGriff notification of the costs incurred for the clean-up "that a rough estimated number for this is @ $450,000.00 with another $12,000.00 in Coast Guard response costs". McGriff sent that by e-mail to the attention of Chris Carey, legal counsel for Great American.

19. On July 6, 2016, a certified letter was sent by the U S Coast Guard to the M/V GLORIA MAY advising that it had responded and incurred costs of approximately $448,845.12 and that the GLORIA MAY may be liable for the removal costs. It also notified that the case might be forwarded to the Department of Justice for potential litigation.

20. On August 23, 2016, Lisa Phu filed a Complaint against Gulf Resource Management, Inc. in the United States District Court of the Southern District of Mississippi, Southern Division, bearing Civil Action No. 16-cv-312 alleging that the collision on August 24, 2014 was the result of due to a breach of duty by the crew in the operation and navigation of the GLORIA MAY and seeking a declaration that the sole cause of the collision and sinking of the CAPT. LE was the negligence of the GLORIA MAY and her crew and seeking damages on behalf of the owners and operators of the F/V CAPT. LE.

21. On November 4, 2016, Lisa Phu filed an Amended Complaint against Gulf Resource Management, Inc. adding claims that the sole negligence of the GLORIA MAY and her crew for the collision and sinking of the CAPT. LE required a declaratory determination that Gulf Resource Management, Inc. should be treated as the responsible party for liability and/or contribution under the Oil Pollution Act ("OPA") for removal costs, fines and penalties under OPA and the Clean Water Act ("CWA").

22. On November 11, 2016, McGriff wrote to Julia Price at Great American to provide the Amended Complaint which now asserted damages in connection with OPA 90. On November 22, 2016, McGriff wrote again to Julia Price to "follow up" on the previous e-mail of November 11, 2016. Neither Julia Price nor her legal counsel, Chris Carey, ever responded.

23. Despite such written notification to Great American of the suit and claims falling within the coverages afforded under its Pollution Policy and the defense now required of same, no response was ever made by Great American or its legal representative Chris Carey with regard to the claim for pollution costs nor to the defense of the suit. This silence came more than two years after the collision and pollution cleanup and clearly after Great American had time to properly investigate this incident and its potential coverage for same.

24. The silence and failure to respond to the broker communications of McGriff and failure to make any effort to defend or appoint counsel to defend the pollution allegations constitutes bad faith on the part of Great American. Specifically, bad faith exists in whole or part for the following non-exclusive ways:

    a. The Great American Pollution Policy covered the discharge of oil or petroleum products and the substantial threat of such discharge;

    b. The Great American Pollution Policy covered defense of such liability for its insureds;

    c. There was no arguable reason for Great American to deny the claim or defense of the claim;

    d. Great American never denied the claim or provided to its insureds any response at all;

    e. There was no acknowledgement or affirmation by Great American that it did any investigation;

    f. Great American's inaction and failure to respond put the entire burden of investigation and defense upon its insured;

g. No response was ever made to re-evaluate the claim when the Amended Complaint of Lisa Phu filed in November 2016 clearly made allegations of claims which could be covered by the Pollution Policy and involved the defense obligation within the Pollution Policy;

h. At all times hereto, Great American was given proper notice of the initial pollution incident and the suit allegations involving their pollution coverage and defense obligations;

i. Great American never advised its insureds of a valid reason why coverage was denied or why defense was not being provided under its Pollution Policy;

j. The actions or inaction and silence of Great American required that the Hull Insurers act to protect their mutual insured and to defend the insured in the litigation filed by Lisa Phu in Civil Action No.16-CV-312 and eventually the litigation asserted by the United States of America in Civil Action No. 17-CV-185;

k. GRMI and the owners of the GLORIA MAY showed that there was potential coverage under the Pollution Policy which gave rise to Great American's duty to defend. This duty to defend arose per the allegations in the suit and exists even where Great American may cast doubt on coverage. This duty to defend on the part of Great American was and is broader than its duty to indemnify.

l. The actions or inaction and silence of Great American required the Hull insurers to act to protect the mutual insureds by not only their defense of all allegations in Civil Action No. 16-CV-312 and Civil Action No. 17-CV-185 covered by

the Hull Policy but also to act to defend and eventually settle all claims a significant portion of which fell within the coverage of the Pollution Policy;

m. The insureds paid premiums to Great American for the coverages and defense owed under the Pollution Policy and the failure to respond in any fashion is a breach of the terms of the Pollution Policy and exposes Great American not only to the amounts paid in settlement on behalf of the insureds for liabilities covered by the Pollution Policy but also for defense costs and attorney fees incurred and also to punitive damages for violation of the obligation to act in good faith and with total disregard for its insureds.

25. On November 28, 2016, legal counsel, James G. Wylie and later Scott R. Wheaton, Jr., appearing pro-hac-vice, appointed on behalf of the insured GRMI and the GLORIA MAY to defend filed Answer, Counterclaim and Third Party Complaint to address the allegations not only for damages for the collision asserted by Lisa Phu to be paid for under the costs of defense obligations of Hull Insurers but also to the allegations on the pollution and response costs which should have been defended by Great American with its appointed counsel and paid for under the Pollution Policy.

26. In its continued defense of all claims including the claims for pollution and response costs, attorneys Wheaton and Wylie filed a First Amended Counterclaim and Third Party Complaint on April 13, 2017 seeking, among other defenses, a declaratory judgment on OPA or CWA liability or, in the alternative, seeking contribution from Lisa Phu under the general maritime law for any liability under OPA or CWA, claims which should have been defended by Great American under its Pollution Policy with its own appointed counsel and paid for under the defense costs obligation under the Pollution Policy.

27. Almost immediately after the filing addressed in Paragraph 26 above, Lisa Phu filed her Second Amended Complaint on April 13, 2017 which, in part, sought a declaratory determination by the court that Gulf Resource Management, Inc. and the GLORIA MAY were the sole cause of the discharge of oil and petroleum products from the sunken CAPT. LE and that all costs under the federal government's bill of $448,845.12 were the liability owed by Gulf Resource Management, Inc. and the GLORIA MAY.

28. On June 27, 2017, the U.S. Department of Justice filed its Complaint against Lisa Phu, Gulf Resource Management, Inc. and the Owners of GLORIA MAY in the United States District Court for the Southern District of Mississippi, Southern Division bearing Civil Action No. 17-cv-185 asserting claims under OPA 90 and seeking declaratory judgment to recover the removal costs to recover and remove the oil but also costs to prevent the actual and substantial threat of further discharge of oil and petroleum into the Gulf of Mexico as a result of the collision of August 24, 2014. Included in the United States of America's allegations were those that Gulf Resource Management, Inc. as operator and the Owners of GLORIA MAY were solely responsible for the collision and the party liable for the removal costs estimated by the government at $550,000.00.

29. On August 1, 2017, Wheaton and Wylie, legal counsel to defend Gulf Resource Management as operator and the Owners of GLORIA MAY, filed Answer to the Complaint of the United States of America and Crossclaim against Lisa Phu. In the Answer and Crossclaim, the defense was asserted that the GLORIA MAY, her owners and operator were not the responsible party for such removal costs but, in the alternative, sought contribution from Lisa Phu pursuant to general maritime law.

30. The following date on August 2, 2017, Wheaton and Wylie, legal counsel appointed to defend Gulf Resource Management, Inc. as operator and the Owners of GLORIA MAY filed a Motion to Dismiss in Civil Action 17-CV-185. In Opposition filed on behalf of the United States of America, the Department of Justice attorneys along with the U. S. Coast Guard's counsel asserted, in part, that OPA allows a responsible party to seek contribution from third parties or to shift liability to third parties under OPA 90. They specifically cited to the recent U. S. Court of Appeals for the Fifth Circuit case of "*In Re: Settoon Towing, LLC, as Owner and Operator of the M/V HANNAH C. SETTOON* "decided by the appeals court on June 9, 2017. In that decision, the Fifth Circuit concluded OPA 90 and the general maritime law allowed for contribution from a jointly liable third party for the removal costs associated with an oil spill.

31. On August 7, 2017, McGriff sent an e-mail to Julia Price at Great American providing to them a copy of a report on this decision from the Fifth Circuit case of "*In Re: Settoon Towing, LLC, as Owner and Operator of the M/V HANNAH C. SETTOON"* along with the request that they be involved in settlement for a contribution towards settlement for the insureds on behalf of the Pollution Policy.

32. Once again, as since the inception of this incident in August 2014, Great American as well its legal counsel, Chris Carey, remained silent and provided no response nor any reason for not informing the insured why it would not defend the suit nor be involved in settlement discussions for its exposure under the Pollution Policy thus acting in bad faith with callous disregard for its insureds and the claims asserted clearly covered by the Pollution Policy.

33. On August 9, 2017, Magistrate Judge Robert H. Walker of the Southern District of Mississippi held a settlement conference with the parties and respective legal counsel for

Lisa Phu, Gulf Resource Management, Inc., the Owners of the GLORIA May and the Department of Justice. The Court conducted a settlement conference in both Civil Action No. 1:16-CV-312 and in Civil Action No. 1:17-CV-185. After lengthy day-long negotiations both cases were resolved by way of an agreed settlement. The amount paid on behalf of the insureds Gulf Resource Management and the Owners of the GLORIA MAY by the Hull Insurers to the United States of America for the pollution removal and clean-up was the sum of $300,000.00 which represented the contribution on behalf of the insureds of two-thirds (2/3) or sixty-seven (67%) percent of the total removal costs of $448,845.12. This was a sum clearly covered under the Pollution Policy and not by the Hull Insurers. This sum was paid by the Hull Insurers as part of a global settlement to resolve all claims against the mutual insureds for the Hull Policy and Pollution Policy. These included the removal cost claims under OPA 90 covered by the Pollution Policy as well the liability claims asserted by Lisa Phu which were properly covered by the Hull Policy.

34. The Hull Insurers paid this sum of $300,000.00 for the pollution removal costs to the United States of America on or about September 13, 2017.

35. By virtue of this payment of the removal costs along with the costs of defending the insureds Gulf Resource Management, Inc. and the Owners of GLORIA MAY on claims covered by the Pollution Policy, the Hull Insurers became subrogated as a matter of contract, law and equity to recover these sums from Great American.

36. By virtue of the bad faith on the part of Great American, the Hull Insurers are also entitled to recover attorney fees, interest, costs and all other general and equitable compensation

including punitive damages as this court is competent to grant under the laws of the State of Mississippi, the United States of America and the general maritime law.

Wherefore, after due proceedings had, Plaintiffs, Gulf Coast Marine Hull & Machinery Underwriting Pool 2013 Companies and Interests consisting of Atlantic Specialty Insurance Company, Markel American Insurance Company, State National Insurance Company, Navigators Insurance Company, and United States Fire Insurance Company pray for judgment in their favor and that defendant, Great American Insurance Company of New York, be cast in judgment as follows:

1. A declaratory judgment be issued establishing that Great American Insurance Company of New York provided pollution insurance coverage under its policy which would be the insurer responsible to pay the apportioned settlement of $300,000.00 plus costs of defense and attorney fees allocated to the defense of the liability for the actual discharge of oil and petroleum products and the substantial threat of such discharge as covered under its policy OMH 1720872 03.
2. Great American Insurance Company of New York be adjudged to pay Plaintiffs the sum of $300,000.00 plus interest from September 13, 2017 until paid.
3. Great American Insurance Company of New York be adjudged to pay Plaintiffs their proportionate share of defense costs and attorney fees related to the defense of the claims related to pollution removal cost claims covered under its policy OMH 1720872 03.
4. Great American Insurance Company of New York be adjudged to have acted in bad faith in its silence and failure to communicate or act to respond in any way to address the claims which were clearly covered by its policy OMH 1720872 03 nor responding in any way to inform the insured of the outcome of their investigation or of any policy defenses or why

they would not take any action to defend their insured thus entitling the Plaintiffs, by way of subrogation and having to undertake to pay such defense costs and fees and the settlement as set forth above, to punitive damages to be determined by this Court.

5. For all other general and equitable relief as this Court is competent to grant and that the law allows.

Respectfully submitted this 22nd day of April, 2020.

*s/M. Brant Pettis*
M. BRANT PETTIS (MSB # 1101976)
JAMES E. LAMBERT III (MSB # 104254)
Balch & Bingham, LLP
1310 Twenty-Fifth Avenue
Gulfport, MS 39501-1931
Telephone No. (228) 214-0426
Facsimile No. (228) 771-3266
E-mail: bpettis@balch.com
E-mail: jlambert@balch.com

and

WILLIAM B. SCHWARTZ
*(Pro Hac Vice Application Forthcoming)*
1100 Poydras Street, 3600 Energy Center
New Orleans, LA 70163-3600
Telephone No. (504) 569-2900
Facsimile No. (504) 569-2099
Email: wschwartz@bhbmlaw.com

Attorneys for Plaintiffs